# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ARIEL MURPHY, INDIVIDUALLY and a/n/f of K.G., A MINOR, § § § *Plaintiffs*, § v. § § HARLEYSVILLE INSURANCE § COMPANY, A FOREIGN § CORPORATION, § § *Defendant.* § | Civil Action No. 4:23-cv-1044 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #50). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the motion should be **GRANTED in part**. This case should be **DISMISSED without prejudice**.

## BACKGROUND

This is an insurance dispute with a complex procedural posture. The matter before the Court involves an underlying suit, a bankruptcy proceeding, and this civil action. The Court will highlight the relevant points, paying specific attention to the underlying liability suit Plaintiff filed in state court (the "Liability Suit") and this lawsuit between Plaintiff and Defendant regarding insurance coverage (the "Coverage Suit").

### I. The Liability Suit

During the fall of 2018, Plaintiff Ariel Muphy enrolled her nine-week-old child, K.G., in a daycare program known as Joyous Montessori ("Joyous") (Dkt. #52–1 at p. 69; Dkt. #61 at ¶ 4). Joyous Montessori was owned and operated by Saldap, LLC d/b/a Joyous Montessori ("Saldap") (Dkt. #50 at ¶ 9). One of Joyous's employees, Jessica Wiese ("Wiese"), supervised the daycare

class that K.G. attended (*See* Dkt. #50 at ¶¶ 9, 14; Dkt. #52-1 at p. 69). On or about November 27, 2018, Wiese physically abused K.G., resulting in significant injuries (Dkt. #52-1 at p. 70; Dkt. #61 at ¶ 4). His fourth, fifth, sixth and seventh ribs were fractured on both his left and right side, his left femur was fractured, and his left and right tibia and fibula were fractured (Dkt. #52-1 at p. 70; Dkt. #61 at ¶ 4). Plaintiff initially filed suit against Junior Academy of McKinney, Inc. d/b/a Joyous Montessori and Wiese on January 22, 2019 (Dkt. #52-1 at p. 146).[1] At some point between filing her initial Petition and March 21, 2019, Plaintiff amended her Petition to include Saldap and Wiese as defendants and to drop Junior Academy of McKinney, Inc. as a defendant (*See* Dkt. #3 at p. 14).

As part of its mandatory initial disclosures, Saldap produced a liability insurance policy (the "Policy") it had with Defendant Harleysville Insurance Company (Dkt. #3 at pp. 19-22). At first, Defendant provided a defense to Saldap while it investigated the extent of the Policy's coverage (Dkt. #50 at ¶ 14). Ultimately, Defendant sent a letter to Saldap on March 19, 2019, stating that the Policy did not cover Wiese's abusive conduct and stated that it would withdraw its defense (Dkt. #51-1 at pp. 2-22).

### A.    Saldap's Bankruptcy

Four months after Defendant's letter, Saldap filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court") (Dkt. #50 at ¶ 15; Dkt. #52-1 at pp. 157-60). On August 7, 2020, the Bankruptcy Court entered an Order confirming Saldap's Reorganization Plan (Dkt. #52-1 at pp. 161-85). As part of the Order confirming the Reorganization Plan, the Bankruptcy Court also entered a permanent

---

[1] A Collin County, Texas Grand Jury indicted Wiese for abusing K.G. on February 28, 2019 (Dkt. #52-1 at p. 22).

2

injunction, pursuant 11 U.S.C.§ 524 (the "Bankruptcy Injunction"). The Bankruptcy Injunction states:

> From and after the Effective Date (August 22, 2020), all holders of Claims shall be and are hereby permanently restrained and enjoined from: . . . commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor or its Assets.

(*See* Dkt. #52-1 at p. 178). On December 10, 2020, the Bankruptcy Court entered a Final Decree Order, which closed Saldap's Chapter 11 case (Dkt. #52-1 at pp. 188–89). As part of the Final Decree Order, the Bankruptcy Court held that "notwithstanding the entry of this Final Decree Order closing the Chapter 11 case, the Court shall retain jurisdiction over *SALDAP LLC'S Subchapter V Plan of Organization* . . . and jurisdiction to enforce the Order Confirming the Plan entered on August 7, 2020" (Dkt. #52-1 at pp. 188–89).

### B.    Default Judgment

With Saldap's bankruptcy resolved, Plaintiff filed her Fifth Amended Petition on June 17, 2021, which expanded the Liability Suit to include a total of eight defendants: (1) Saldap, (2) Urja Inc., d/b/a Joyous Montessori, (3) Vams, LLC d/b/a Joyous Montessori, (4) Joyous Education Corp d/b/a Joyous Montessori, (5) Montessori Values, Inc. d/b/a Joyous Montessori, (6) Jessica Wiese, (7) Vandana Semwal, and (8) Mahavir Semwal (Dkt. #52-1 at p. 60). Plaintiff's Fifth Amended Petition states that it was only filed against Saldap to obtain nominal liability (Dkt. #52-1 at pp. 2–4). Plaintiff limited its liability suit against Saldap because the Bankruptcy Injunction prohibited Plaintiff from seeking to establish any personal liability against Saldap (*See* Dkt. #52-1 at p. 178). In limiting the suit against Saldap, Plaintiff sought to obtain the necessary liability finding against Saldap so that she could pursue Saldap's insurance coverage under the Policy (Dkt. #52-1 at pp. 2–4). On May 5, 2022, Plaintiff again amended her Petition, this time adding another

3

defendant, the Mahavir & Vandana Semwal Revocable Trust Dated April 30, 2020 (Dkt. #52-1 at pp. 215-61). Unsurprisingly, Saldap did not answer or respond to Plaintiff's Fifth or Sixth Amended Petitions (*See* Dkt. #50 at ¶ 17).

On May 4, 2023, the 401st Judicial District Court of Collin County, Texas (the "State Court") entered a default judgment against Saldap (the "Default Judgment") (Dkt. #52-1 at pp. 209-12). After conducting a hearing on damages, the State Court awarded Plaintiff $3,000,000 in compensatory damages and $60,000,000 in exemplary damages (Dkt. #52-1 at p. 212). Notably, the Default Judgment states that Plaintiff can recover the compensatory damages "from the insurance company" for Saldap (Dkt. #52-1 at p. 212). Additionally, the State Court limited the Default Judgment's scope so that it only established nominal against Saldap and therefore would not violate the Bankruptcy Injunction (*See* Dkt. #52-1 at pp. 209-12).

## II.  The Coverage Suit

On October 25, 2023, with the Default Judgment in hand, Plaintiff filed a new action against Saldap's insurers in the State Court, seeking to enforce the Default Judgment and pursue the Policy issued to Saldap (Dkt. #1 at ¶ 1; Dkt. #3). Initially, Plaintiff sued three different insurance companies: (1) On Your Side Nationwide Insurance Agency, Inc. ("Nationwide"), (2) Harleysville Insurance Company ("Harleysville"), and (3) Hibbs-Hallmark & Co. n/k/a Hibbs-Hallmark Insurance ("Hibbs-Hallmark") (Dkt. #3 at pp. 3-4). On November 27, 2023, Harleysville and Nationwide filed a notice of removal in this Court, asserting that the Court has diversity of citizenship jurisdiction because Hibbs-Hallmark was improperly joined (Dkt. #1 at ¶¶ 20-24). Plaintiff filed a Motion to Remand on December 26, 2023 (Dkt. #10). On August 21, 2024, the Court denied Plaintiff's Motion to Remand and dismissed Hibbs-Hallmark as improperly

4

joined (Dkt. #56). On September 27, 2024, the parties filed an agreed stipulation to dismiss Nationwide without prejudice (Dkt. # 60). The only remaining defendant is Harleysville.

### III. Complications in the Liability Suit

During Plaintiff's pursuit of Saldap's insurers, she also continued the litigation in the Liability Suit against Saldap and the other defendants. In November of 2023, Plaintiff noticed the depositions of Saldap's non-party owners (Dkt. #50 at ¶ 18; Dkt. #52–1 at pp. 262–78). In response to the deposition notices Saldap filed a Motion to Quash. (Dkt. #52–1 at pp. 82–89). In support of its Motion, Saldap argued that Plaintiff had violated the Bankruptcy Injunction by continuing to pursue Saldap despite its bankruptcy discharge (Dkt. #52–1 at pp. 82–89). In response to the Motion to Quash the State Court quashed the deposition notices against Saldap's non-party owners and abated all proceedings against Saldap (Dkt. #52–1 at pp. 290–93). The State Court found that abating the proceedings against Saldap was proper because Plaintiff had not sought approval from the Bankruptcy Court before litigating against Saldap in a nominal capacity (Dkt. #52–1 at pp. 290–93). Thus, the State Court found that Plaintiff's suit had implicated the protections of the Bankruptcy Injunction and Plaintiff could not proceed without express permission from the Bankruptcy Court (*See* Dkt. #52–1 at pp. 290–93). To date, no party has informed this Court whether the Bankruptcy Court has granted Plaintiff permission to pursue Saldap as a nominal defendant.

### IV. Coverage Suit Summary Judgment

In addition to continuing litigation in the Liability Suit, this litigation proceeded. On August 15, 2024, Defendant filed its Motion for Summary Judgment (Dkt. #50). Specifically, Defendant argues that summary judgment is proper because the Policy does not cover Wiese's abuse of K.G. (Dkt. #50). Further, Defendant argues that Plaintiff lacks standing to maintain a direct suit against

5

it based on the Default Judgment (Dkt. #50). On September 27, 2024, Plaintiff filed her Response (Dkt. #61). Through it, she argues that she has standing to maintain the suit and that a jury must decide whether the Policy covers K.G.'s injuries (Dkt. #61). Defendant filed its Reply on October 4, 2024 (Dkt. #63).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears

6

the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

The primary dispute is whether the Policy covers the abuse of Plaintiff's child, K.G. Defendant argues that it is entitled to summary judgment for two reasons. First, Defendant argues that Plaintiff lacks standing to sue under the no-direct-action rule (Dkt. #50 at pp. 23–30). In order to have standing, Defendant argues that Plaintiff must have a valid final judgment to sue it directly (Dkt. #50 at pp. 22–28). Thus, according to Defendant, Plaintiff lacks standing because the Default Judgment was entered in violation of the Bankruptcy Injunction, which makes it void (Dkt. #50 at pp. 23–28). Second, Defendant argues that, even if Plaintiff has standing, the Policy does not cover the abuse Plaintiff's child suffered (Dkt. #50 at pp. 12–19).

Plaintiff argues in response that she has standing to pursue Defendant because the Default Judgment against Saldap satisfies the no-direct-action rule (Dkt. #61 at pp. 22–26). According to Plaintiff, the Default Judgment satisfies the requirements under Texas law and the Policy to pursue Saldap's insurer directly, as she established liability against Saldap via the Default Judgment (Dkt. #61 at pp. 18–26). Additionally, she argues that the Default Judgment does not violate the Bankruptcy Injunction because the State Court only entered it to establish Saldap's liability in name only (Dkt. #61 at pp. 18–26). According to Plaintiff, the Default Judgment does not violate the Bankruptcy Injunction because it does not establish personal liability against Saldap (Dkt. #61 at pp. 18–26). Thus, she argues that the Default Judgment is a valid judgment that allows her to pursue Saldap's insurers (Dkt. #61 at pp. 18–26). Finally, Plaintiff examines other provisions in the Policy to argue that there is some coverage for the abusive conduct in this case (Dkt. #61 at pp. 10–18). For the most part, Defendant's Reply reiterates the arguments it raised in its Motion for Summary Judgment (*See* Dkt. #63).

This is a diversity case, so the Court must apply the substantive law of Texas. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). To begin its analysis, the Court will first evaluate whether Plaintiff, as a third party to the Policy, has standing to sue Defendant. To determine this issue, the Court will by reviewing Texas insurance law and the requirements for a third party to bring suit directly against an insurer. Next, the Court will evaluate whether Plaintiff has complied with the requirements of Texas law for a third-party plaintiff to sue an insurer directly. She has not.

I. **Standing in Third-Party Insurance Lawsuits—The No-Direct-Action Rule**

The Court must first determine whether Plaintiff has standing to sue Defendant. The no-direct-action rule is a standing requirement unique to insurance coverage disputes, where an injured plaintiff must meet certain conditions to maintain a lawsuit against a defendant's insurer.

8

*See Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 308–309 (5th Cir. 2021). Indeed, Texas Courts consider the no-direct-action rule to be jurisdictional. *See id.* at 308. To understand why Texas Courts consider the no-direct-action rule as jurisdictional, the Court will begin by examining the basics of Texas insurance law. An insurance policy is a contract that establishes the rights and obligations to which an insurer and its insured have agreed. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). In insurance law, all claims can be generally categorized as a first-party claim or a third-party claim. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 17 (Tex. 2007). The claims are distinguished by the claimant's relationship to the loss. *Id.* A "first-party claim is stated when 'an insured seeks recovery for the insured's own loss,' whereas a third-party claim is stated when 'an insured seeks coverage for injuries to a third party.'" *Id.* (quoting *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 n.2 (Tex. 1997)).

When a tortfeasor has a liability insurance policy, like the one between Saldap and Harleysville, the insured tortfeasor can maintain suit on the insurance policy for a breach of the policy or for protection from liability. *See id.*; *see also Landmark Am. Ins. Co. v. Eagle Supply & Mfg. L.P.*, 530 S.W.3d 761, 768 (Tex. App.—Eastland 2017, no pet.). However, a party aggrieved in contract or tort "by the insured is a third-party beneficiary of a liability insurance policy." *Turner*, 9 F.4th at 309 (citing *State Farm Cnty. Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 773 (Tex. 1989)). In Texas, third-party beneficiaries face the hurdle of the no-direct-action rule, which states that "an injured party cannot sue the defendant's insurer directly until the defendant's liability has been finally determined by agreement or judgment." *Id.* (citing *In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014)). In other words, a third-party plaintiff cannot seek to enforce a policy directly against an insurer until it establishes that the insured has a legal obligation to pay damages. *Id.*

9

The no-direct-action rule originated from the frequent usage of no-action clauses in insurance policies and Texas Courts' willingness to enforce such provisions. *Turner*, 9 F.4th at 309 (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 801 (Tex. 1992) (quoting *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265–66 (Tex. 1969))) ("We have held that when such 'no action' policy provisions exist, a 'third party's right of action against the insurer does not arise until he has secured such an agreement or a judgment against the insured.").[2] However, as time passed, the Texas Supreme Court adopted the no-direct-action rule as a common law general rule based on public policy considerations, "including the conflict of interest that arises when insurers must both defend themselves and their insureds and the prejudice that results when juries hear evidence of a defendant's insurance coverage." *In re Ill. Nat. Ins. Co.*, 685 S.W.3d 826, 835 n.5 (Tex. 2024) (citing *Turner*, 9 F.4th at 309).[3]

### A.    Fully Adversarial Trial Requirement

The determination of standing between a third-party plaintiff and insurer has an additional wrinkle—the fully adversarial trial requirement. The fully adversarial trial requirement traces its roots to the Texas Supreme Court's decision in *State Farm Fire & Cas. Co. v. Gandy*. 925 S.W.2d 696 (Tex. 1996). There, the insured defendant settled with the third-party plaintiff and assigned his insurance coverage claims as part of the settlement. *Id.* at 698. All of this occurred without notice to the insured defendant's insurer. *Id.* The trial court entered an agreed judgment against

---

[2] A no-action clause is a provision in an insurance contract that sets out a bar on a third-party bringing suits against the insurer directly for the actions of the insured. *See, e.g.*, *Turner*, 9 F.4th at 308–13. These clauses commonly limit the third party's ability to sue the insurer by requiring a condition precedent of the third-party plaintiff obtaining some form of a judgment, adjudication, or settlement against the insured before pursuing the insurer directly for the policy coverage. *Id.*

[3] Further, Texas adopted formal procedural rules "expressly prohibiting claimants from joining liability and indemnity insurers as third parties unless the insurer 'is by statute or contract liable to the person injured or damaged.'" *Ill. Nat. Ins. Co.*, 685 S.W.3d at 835 n.5 (citing TEX. R. CIV. P. 38(c); 51(b)).

10

the insured defendant, which the plaintiff used to sue the insurer. *Id.* The Texas Supreme Court invalidated the assignment and rendered a take-nothing judgment in the suit against the insurer, holding that "[i]n no event . . . is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee." *Id.* at 711–14.[4]

The Texas Supreme Court clarified *Gandy's* institution of the fully adversarial trial requirement in *Great Am. Ins. Co. v. Hamel.* 525 S.W.3d 655 (Tex. 2017). There, third-party plaintiffs obtained a non-adversarial judgment and assignment from an insured-defendant. *Id.* at 661. Before the third-party plaintiffs obtained the judgment and assignment, they entered into a pretrial agreement with the insured-defendant, which "removed the [insured-defendant's] stake in the outcome and any corresponding incentive to defend itself." *Id.* at 668. The Texas Supreme Court ultimately held that the judgment was not binding because it was not the result of a fully adversarial trial, even though the insurer admitted it wrongfully refused to defend the insured-defendant. *Id.* at 666–68. To explain its reasoning, the *Hamel* Court stated that a judgment does not bind an insurer unless "at the time of the underling trial or settlement, the insured bore an actual risk of liability for the damages awarded or agreed upon or had some other meaningful incentive to ensure that the judgment or settlement accurately reflects the plaintiff's damages and thus the defendant-insured's covered liability loss." *Id.* at 666.

---

[4] The Texas Supreme Court also discussed a narrow set of circumstances where an assignment would be invalidated: "A defendant's assignment of his claims against his insurer to a plaintiff is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claims." *Gandy*, 925 S.W.2d at 714.

11

### B. Overlap Between No-Direct-Action Rule and the Fully Adversarial Trial Requirement

While the Texas Supreme Court has addressed the no-direct-action rule and the fully adversarial trial requirement separately, it has not addressed the overlap between them. *Turner*, 9 F.4th at 311. However, one Texas Court of Appeals has analyzed the overlap. *See Landmark*, 530 S.W.3d at 770–72. In *Landmark* a third-party plaintiff sought to enforce two non-adversarial judgments against an insured-defendant's insurer. *Id.* at 770. There, the no-action clause stated:

> No action will be taken against [Landmark] unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy and until the amount of the insured's obligations to pay shall have been fully determined, either by a judgment against the insured *after actual trial*, or by written agreement of the insured, the claimant and the Company.

*Id.* (emphasis added). To determine if the third-party plaintiff could sue the insurer directly, the *Landmark* court applied the no-direct-action rule and *Hamel* together. *Id.* at 772. Ultimately, the court held that the third-party plaintiff's claims were not ripe under the no-direct-action rule because the policy language required an actual trial and the non-adversarial judgments did not satisfy that requirement under *Hamel*. *Id.*

Moreover, the Fifth Circuit has also addressed the overlap between the no-direct-action rule and the fully adversarial trial requirement under Texas law. *Turner*, 9 F.4th 311–13. In *Turner*, the Fifth Circuit analyzed whether a default judgment against an insured-defendant was sufficient to satisfy the no-direct-action rule and the fully adversarial trial requirement. *See id.* In doing so, the Fifth Circuit determined that the Texas Supreme Court would adopt the following approach when the no-direct-action rule and the fully adversarial trial requirement overlap:

> First, the "general rule" applies, *i.e.*, a third-party plaintiff is barred from suing the defendant's insurer, when the third-party plaintiff has obtained neither a judgment nor agreement of any kind establishing the insured-defendant's liability.

12

> Second, if the third-party plaintiffs obtain a judgment, then the court must look to the language of the no-action clause [in the insurance policy] to determine whether it is the sort of judgment that satisfies the no-direct action rule. For example, if the no-action clause contains an 'actual trial' requirement, then the judgment must be sufficiently adversarial under *Hamel* . . . . Generally speaking, the court must determine whether the obtained judgment satisfies whatever requirement the relevant no-action clause contains.

*Id.* at 312.

With respect to the general rule, the Fifth Circuit found that the default judgment was enough to proceed to evaluate the policy's no-action clause. *Id.* at 312–13. The clause stated:

> No action shall be taken against us unless, as a condition precedent thereto, there shall have been full compliance with the terms of this policy and until the obligation of the "policy insureds" to pay shall have been finally determined, either by an *adjudication* against them or by written agreement of the "policy insureds," the claimant and us.

*Id.* at 312. The Fifth Circuit distinguished the *Turner* no-action clause, which only requiring an "adjudication," from those found in other Texas cases that required an actual trial. *Id.* at 313. Thus, the Fifth Circuit held that the default judgment satisfied the no-action clause and did not implicate the fully adversarial trial requirement because it did not require an actual trial. *Id.*[5] Ultimately, the Court held that the policy language did not require an actual trial, so the fully adversarial trial requirement of the Texas Supreme Court was not implicated and the third-party plaintiffs had standing to proceed. *Id.* at 313.

## II. No-Direct-Action Standing Under Defendant's Policy

In this case, the Court must utilize the *Turner* two-step analysis in evaluating whether Plaintiff has standing because Plaintiff is pursuing an insurer directly based on a non-adversarial default judgment. The first step is to determine whether Plaintiff has satisfied the "general rule"—

---

[5] In reaching its holding, the Fifth Circuit acknowledged that there is not a seamless web of caselaw from Texas on the issue, but that the relevant cases are all reconcilable with each other. *Id.* at 313.

13

whether Plaintiff has a judgment or agreement. *See id.* at 312. As in *Turner*, the State Court entered a default judgment against an insured defendant. *See id.* Thus, the Court finds that Plaintiff has satisfied the first prong of the *Turner* analysis. Next, the Court must evaluate the Policy to determine if the Default Judgment satisfies the relevant no-action clause.

Here, the Policy states that: "A person or organization may sue [Defendant] to recover as a result of an 'agreed settlement' or on a *final judgment* against an insured" (Dkt. #50–2 at p. 196) (emphasis added). Defendant argues that Plaintiff has not satisfied the Policy's final judgment requirement because the Default Judgment is not a final judgment (Dkt. #50 at pp. 26–30). The Court agrees with Defendant, though only in part, that the Default Judgment does not satisfy the final judgment requirement because, under Texas law, it does not constitute a final judgment. In short, the Default Judgment lacks effect against all Defendants in the Liability Suit.[6]

Under Texas law, a default judgment, like a summary judgment, is not presumed to be a final judgment. *See In re Bro Bro Prop., Inc.*, 50 S.W.3d 528, 530 (Tex. App.—San Antonio 2000, no pet.) (citing *Houston Health Clubs, Inc. v. First Ct. App.*, 722 S.W.2d 692, 693 (Tex. 1986)). The Texas Supreme Court requires a final judgment to dispose of *all* parties and *all* claims. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Here, the Default Judgment was only issued against Saldap, LLC d/b/a Joyous Montessori (Dkt. #50–2 at pp. 209–12). Thus, it only disposed of the claims against *one* defendant out of the nine defendants Plaintiff sued. Plaintiff states that "[t]he judgment went final and is now a final non-appealable judgment." (Dkt. #61 at p. 20). Plaintiff is incorrect. A default judgment is not a final judgment, nor is it appealable under Texas

---

[6] Because the Court finds that the Default Judgment does not meet the express requirements of the no-action clause in the Policy, the Court does not reach the question of whether the *Hamel* fully adversarial trial requirement is implicated by the Policy. *See Turner*, 9 F.4th at 312.

law, until the State Court disposes of all parties and all claims. *See Fusion Indus., LLC v. Edgardo Madrid & Assocs., LLC*, 624 S.W.3d 843, 848–49 (Tex. App.—El Paso 2021, no pet.) (citing *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 830 (Tex. 2005)); *Costano v. Foremost Cnty. Mut. Ins. Co.*, 31 S.W.3d 387, 388 (Tex. App.—San Antonio 2000, no pet.) (per curiam) (holding that a default judgment against one defendant is not subject to appeal until the trial court either (1) renders a final judgment in the case or (2) signs an order of severance making the interlocutory judgment final). Therefore, Plaintiff lacks standing to sue Defendant at this time. Accordingly, the suit should be dismissed without prejudice. *See Transwood Carriers, Inc. v. Gemini Ins. Co.*, No. H-21-383, 2021 WL 7708322, at *4 (S.D. Tex. Dec. 17, 2021) (citing *Colgrove v. Collins*, 62 F.3d 391, 1995 WL 449731 (5th Cir. 1995)) (dismissing an insurance dispute without prejudice where the third-party plaintiff lacked standing).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #50) is **GRANTED in part**. It is **ORDERED** that Plaintiff's claims against Defendant Harleysville Insurance Company are hereby **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

SIGNED this 7th day of July, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE